UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Estate of Frederick Rode,

     Plaintiff,

v.                          Case No. 17-10615

Citizens Insurance Company,        Sean F. Cox
                             United States District Court Judge

     Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is a suit seeking no-fault benefits from the defendant insurance company for injuries

sustained by Plaintiff's decedent in a 2013 automobile accident. Discovery has concluded and

Plaintiff has moved for summary judgment. For the reasons below, the Court shall grant the

motion in part and deny it in part. The Court shall grant the motion as to Plaintiff's medical

payments claim because Defendant does not object to the requested payment of $43,891.61 in

medical benefits. But the Court shall deny Plaintiff's motion in all other respects because

genuine issues of material fact exist for trial.

**BACKGROUND**

On September 9, 2013, Frederick Rode was involved in an automobile accident. Pl.

Stmt. of Material Facts, ¶ 1. Rode, who maintained an automobile insurance policy with

Defendant Citizens Insurance Company, notified Defendant the next day of a claim for first-

party no-fault benefits and underinsured motorist benefits. *Id*. at ¶ 12, 18-19. But aside from

paying for Rode's initial hospitalization, Defendant denied Rode's request for benefits, attesting

that the injuries he sustained did not result from the accident. *Id*. at ¶ 13.

What were those injuries? Per Rode, immediately after the accident he began experiencing burning in his torso, an electric-shock-like sensation in his lower extremities, and cervical spine pain. *Id*. at ¶ 2. Two months later, he visited an orthopaedic surgeon, Dr. Sidhu, complaining of pain in his neck, mid-back, and lower back, which also radiated to his extremities. *Id*. at ¶ 3. A January 2014 MRI revealed that Rode had disc bulges at the C5-6 and C6-7 levels of his cervical spine. Pl. Ex. 5. Two months later, because an MRI showed a large herniated disc, Dr. Sidhu proposed that Rode undergo a cervical discectomy surgery and Rode did so the next month. Pl. Stmt., ¶ 7-8, 10. Defendant's own evaluating doctor would later opine that the accident had caused Rode to develop the C6-7 herniated disc that prompted the surgery. Def. Ex. 3, p. 9.

A couple years later, in a September 2016 deposition, Rode discussed the effect that his injuries had allegedly had on his quality of life. Three months prior, Rode had started going to physical therapy due to pain in his neck that radiated throughout his body. Pl. Dep., p. 88. During those next few months, Rode also had difficulty controlling his hand; for instance, he would drop his cellphone while trying to carry it. *Id*. at 88, 96. Rode also needed help with chores around the house as he had difficulty lifting large loads of laundry, putting dishes away on upper shelves, cutting grass, shoveling snow, and raking leaves. *Id*. at 90-92. Basic hygiene was also an issue; Rode had difficulty getting dressed, going to the bathroom, and showering. *Id*. at 107-08. Unsurprisingly, many of his leisure activities had also been limited, such as boating, skiing, and driving his sport's car. *Id*. at 109-114.

Yet the September 2013 accident was not the beginning of Rode's troubles. Before the

accident, in early 2013, he had applied for Social Security Disability Benefits. Def. Ex. 7.  In his application, he reported a litany of issues relating to pain in his back, including: lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, and completing household chores.  *Id*. at 4.  Rode also noted that he had numbness and weakness in both hands, leading to difficulty grasping and holding items.  *Id*.  These physical problems led to issues in Rode's daily life; he noted that he had difficulty standing and completing tasks.  *Id*. at 1.  And along with these problems, Rode's application also detailed numerous social limitations.  He reported engaging in few daily activities, having difficulties with memory and concentration, and having a reluctance to go out in public.  *Id*. at 4.

These problems persisted.  Medical records from February 2013 show that Rode had been attending physical therapy for lower back, left shoulder, and hip pain.  Def. Ex. 12, p. 1.  At that time, he also reported pain in his cervical spine that radiated down his back and decreased range of motion and pain in his left shoulder.  *Id*. at 1-2.  For this, his treating physician recommended that Rode continue with physical therapy.  *Id*. at 2.

The next month, Rode underwent a psychological assessment for his disability application.  Def. Ex. 8, p. 1.  Rode reported to the examiner that on most days he did not get out of bed and that he isolated himself from others, noting that he had no friends or people that he socialized with.  *Id*. at 1-2.  He also mentioned that he had previously been hit by a car, leading to trouble with his hips, neck, and back that caused him to refrain from much activity.  *Id*. at 3. The resulting diagnostic impression from the assessment was major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia.  *Id*. at 4. Other medical records from this time frame also indicate that Rode had not been driving due to his medical

3

issues.  Def. Ex. 11, p. 4.

In April 2013, the Social Security Administration determined that Rode was totally disabled from working as of December 2, 2011 and that medical improvement was not expected. Def. Ex. 9, p. 16.  Rode then began receiving disability benefits.  *Id*. at 17.

Five months later, the accident at issue here occurred.  Rode sought medical care for his resulting injuries and, from February 2014 through September 2014, he was billed $43,891.61 for various medical treatments relating to the accident.  *Id*. at ¶ 22-31.  Although Defendant had denied coverage for certain no-fault benefits, it did issue checks to Rode for these treatments under his policy's medical payments coverage.  But although Defendant issued Rode a check for the billed amount of each treatment, those checks were never cashed.  *Id*.  The reason for this is disputed; Plaintiff contends the checks were unable to be cashed, Defendant states Rode never cashed them and allowed them to go stale.  In any event, Defendant presently does not object to the payment of $43,891.61 in medical benefits.  Def. Counter-Statement of Material Facts, ¶ 31.

In October 2014, Defendant had Rode undergo an independent medical examination.  *Id*. at ¶ 14.  At the time, Rode complained of neck pain and numbness in his limbs, hands, and face. Def. Ex. 10, p. 2.  The evaluating doctor, Dr. Nikpour, noted that these same complaints–such as the neck and back pain–were present after Rode was in car accidents in 2004 and 2012.  *Id*. at 4. Dr. Nikpour noted, however, that the "abnormality that was positive in the recent accident" was the spurring and disc complex at Rode's C5-C6 and C6-C7 discs.  *Id*.  And he acknowledged that the accident led to the C6-7 damage that required surgery.  *Id*. at 9.  But he was unsure whether the September accident contributed to the continued numbness Rode was experiencing.  *Id*.

Dr. Nikpour also painted a rosier picture of Rode's physical capabilities.  He stated: "I do

not see at present any neurological problem or deficit with him or physical deficit with him that he could not go back to work and perform his job at GM. He is physically capable of doing so." *Id.* He also felt similarly about Rode's personal life: "It seems to me that he is a physically strong young man that he can perform all his personal care and personal duty without any difficulty." *Id*.

The record contains scant information about the next two years. Eventually, in March 2016, Rode displayed some complications, leading to Dr. Sidhu giving him the option of a revision surgery for pseudoarthrosis repair. Pl. Ex. 7. Yet this surgery never occurred and Rode died in December 2016.[1] Pl. Stmt., ¶ 11.

In January 2017, Plaintiff, Rode's estate, filed suit for no-fault benefits against Defendant and Blue Cross and Blue Shield of Michigan, which has since been voluntarily dismissed from the case (Doc. # 5). Plaintiff has now moved for summary judgment (Doc. # 24) and Defendant has responded (Doc. # 32). As agreed upon by the parties, the Court shall decide the motion on the briefs, the issues having been adequately presented therein. LR 7.1(f)(2).

## STANDARD OF DECISION

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch*., 305 F.3d 520, 526 (6th Cir. 2002).

---

[1] The parties do not allege that his death was related to any injuries suffered in the September 2013 accident.

5

## ANALYSIS

According to Plaintiff's motion, it seeks summary judgment on two separate claims that are based on the uninsured motorist coverage and the medical payments coverage in Rode's insurance policy. The Court shall address each in turn.

### I. Underinsured Motorist Coverage

Plaintiff's first claim is based on Rode's underinsured motorist coverage. Both parties agree that this is a claim for noneconomic loss. Under M.C.L. § 500.3135(1), liability for noneconomic loss lies only if the injured person "suffered death, serious impairment of body function, or permanent serious disfigurement." At issue here is whether Rode suffered a serious impairment of body function, that is, "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." M.C.L. § 500.3135(5).

What does this entail? First, there must be an objectively manifested impairment–an impairment that is "observable or perceivable from actual symptoms or conditions." *McCormick. v. Carrier*, 795 N.W.2d 517, 527 (Mich. 2010). Next, the impairment must be of an important body function–one that has great value, significance, or consequence. *Id*. at 528. Finally, the impairment must affect the person's general ability to lead his normal life. *Id*. at 529. Whether these prongs are satisfied should be determined by the Court as a matter of law unless there is a "material factual dispute regarding the nature and extent of the person's injuries[.]" *Id*. at 526.

*Objectively Manifested Impairment*. Plaintiff argues that the cervical injuries at Rode's C5-C6 and C6-C7 discs satisfy this prong. There is no question of fact that at least some of Rode's cervical damage–the C6-C7 injury in particular–was caused by the accident and required

surgery. Indeed, this was confirmed by Defendant's own reviewing physician. *See* Def. Ex. 10, p. 9. And this injury was accompanied by actual symptoms; Rode consistently reported suffering from pain and numbness after the accident. These reported symptoms, coupled with the medical records showing a physical basis for those symptoms, establish that Rode suffered from an objectively manifested impairment. *See Patrick v. Turkelson*, __ N.W.2d __; 2018 WL 442417, p. 4 (Mich. Ct. App. 2018) ("Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested.").

 *Important Body Function*. Rode's impairment also affected an important body function. The undisputed facts show that he suffered a spinal injury that required surgical intervention. There can be "no serious dispute that the spine is an extremely important part of every person's body." *Chouman v. Home Owners Ins. Co.*, 810 N.W.2d 88, 94 (Mich. Ct. App. 2011).

 *Affecting Rode's Ability to Lead His Normal Life*. But did this impairment of an important body function affect Rode's ability to lead a normal life? True, there is record evidence to support this conclusion. Rode complained of neck and back pain that limited his ability to care for himself and participate in basic household activities. The pain also caused him to need assistance for many of his prior leisure activities (if he continued to engage in them at all). All of this evidence lends credence to Plaintiff's assertion that Rode's "normal manner of living" had been affected. *See McCormick*, 795 N.W.2d at 530.

 Yet Plaintiff must show that the *particular* impairment–the cervical injury–had a tangible effect on Rode's ability to lead a normal life. *See Benefiel v. Auto-Owners Ins. Co.*, 759 NW.2d 814 (Mich. 2008); *Lopez-Garcia v. United States*, 207 F.Supp.3d 753, 760 (E.D. Mich. 2016)

("[A] plaintiff must show that *an accident-related injury* had 'an influence on some of the person's capacity to live in his or her normal manner of living.'"), *quoting McCormick*, 795 N.W.2d at 530 (emphasis added). And, viewing the facts in Defendant's favor, there is evidence in the record that suggests that Rode's difficulties may not be attributable to the accident-related injury here.

Even before the accident, Rode was beset with many of the medical issues and lifestyle limitations that he attributed to the accident in his deposition. Back pain? About nine months before the accident, Rode reported in his disability application that back pain limited his ability to complete even the most basic household tasks. Difficulty holding things? This was an ongoing problem before the accident. Inability to drive? Medical records show that Rode had not been driving due to his medical issues since at least six months before the accident. Lack of social activities? Rode's disability application and psychological assessment paint a very different picture of his alleged hobbies, depicting an individual who participated in few daily activities and isolated himself socially from others. All of this creates a material question of fact on whether Rode's cervical injury actually affected his ability to lead a normal life.

Pointing in a different direction (but still not in Plaintiff's favor) is the report of Dr. Nikpour, who offered a very different account of the difficulties, or lack thereof, that Rode faced after his injury. Dr. Nikpour opined that Rode was physically capable of returning to his job at GM and of performing all of his personal care *without any difficulty*. Thus, this report also helps create a genuine question of fact. *See Chouman*, 810 N.W.2d at 94-95 (holding a genuine question of fact existed when the defendant's examining physician testified that she was unable to find an objective basis for the plaintiff to be restricted in any way by her spinal injury).

It may be the case that Rode's injury did indeed affect his ability to live a normal life, whether by creating new limitations or exacerbating old ones. But, as it stands, Defendant has presented evidence showing a genuine issue of material fact on this issue, which precludes the Court from deciding the serious impairment question as a matter of law. Thus, the Court shall deny Plaintiff's Motion for Summary Judgment on this claim.

## II. Medical Payments Coverage

Next, Plaintiff seeks summary judgment on its medical payments coverage claim, arguing that Defendant should have paid Rode's $43,891.61 in medical expenses. Defendant does not respond to this claim its brief, thereby failing to identify any genuine issue of material fact. Indeed, Defendant appears to concede liability in its counter-statement of facts, stating: "Defendant does not object to the payment of $43,891.61 in medical benefits[.]" Def. Br., p. 7-8. Thus, the Court shall grant Plaintiff's Motion for Summary Judgment on this claim for the $43,891.61 in medical expenses.

Along with the medical expenses amount, however, Plaintiff also seeks penalty interest and attorney fees for Defendant's alleged failure to pay its claims in a timely fashion. But, Plaintiff has not yet shown that it is entitled to either as a matter of law.

First, Plaintiff seeks penalty interest under M.C.L. § 500.2006(4), which requires an insurer to pay interest to an entity directly entitled to benefits if policy benefits were not paid in a timely manner. *Griswold Properties, LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007). But according to Defendant, it promptly issued checks for Rode's medical expenses; Rode simply did not cash them. True, Plaintiff disputes this, arguing that the checks were not capable of being negotiated. But Plaintiff has not met its burden to show that no

genuine issue of material fact exists on this issue, failing to put forth any evidence showing that Rode could not cash the checks or that the checks were not issued on a timely basis. Simply put, Plaintiff has given the Court no reason to disregard Defendant's version of the facts. So, the Court shall decline to award penalty interest at this time.

Second, Plaintiff seeks attorney's fees under M.C.L. § 500.3148(1), which are awarded "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." But Plaintiff's argument goes no further than summarily stating that Defendant unreasonably refused to pay Plaintiff's claim. The Court will not award attorney fees based on this perfunctory analysis. *See McPherson v. Kelsey*, 125 F.3d 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In sum, the Court shall award Plaintiff summary judgment on its medical benefits claim. But, because Plaintiff has not yet shown entitlement to penalty interest or attorney's fees, the Court declines to award them at this time.

### III. Attendant Care Benefits

Finally, for the first time in its reply brief, Plaintiff claims entitlement to attendant care benefits (a type of personal protection insurance benefits) under M.C.L. § 500.3107(1)(a). Plaintiff could have raised this argument in its Motion for Summary Judgment but did not. It is improper for Plaintiff to do so now and the Court will not consider this argument. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

### CONCLUSION

For the reasons above, IT IS ORDERED that Plaintiff's Motion for Summary Judgment

is GRANTED IN PART AND DENIED IN PART. The Court GRANTS summary judgment in

Plaintiff's favor on Plaintiff's medical expenses claim for $43,891.61. But the Court DENIES

Plaintiff's Motion Summary Judgment in all other respects because genuine issues of material

fact exist for trial.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 15, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 15, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager